# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                          Bankruptcy Case No. 18-33707

Diocese of Winona-Rochester,                    Chapter 11

      Debtor.

_____

DW Harrow & Associates, LLC, *as Trustee of the Diocese of Winona-Rochester Settlement Trust*,

      Plaintiff,

v.                                              Adversary Proceeding No. 18-03094

United States Fire Insurance Company, et al.,

      Defendants.

---

## REPORT AND RECOMMENDATION

---

At St. Paul, Minnesota.

This case came before the Court on February 9, 2022 for a hearing on the Amended Notice of Hearing and Motion on Defendant's Motion to Dismiss the Amended Complaint ("Motion to Dismiss") filed by United States Fire Insurance Company ("Defendant" or "U.S. Fire"). Dkt. No. 112 (the docket number refers to Case No. 18-03094 unless otherwise noted). U.S. Fire challenges the Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b). DW Harrow & Associates, LLC ("Plaintiff" or "DW Harrow"), as Trustee of the Diocese of Winona-Rochester Settlement Trust ("Trust"), objected to the Motion to Dismiss. Dkt. No. 122. At the hearing, Timothy Burns, Jesse Bair, and Christina Arnone appeared for the Plaintiff.

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *04/22/2022*
Tricia Pepin, Clerk, by KN

Michael Cohen, Pamela Tillman, Charles Spevacek, and George Calhoun appeared for the Defendant.

After the February 9, 2022 hearing on the Motion to Dismiss, the Court issued an order dated February 16, 2022 inviting the parties to brief permissive abstention under 28 U.S.C. § 1334(c)(1) by February 25, 2022. Dkt. No. 132. The Court held a hearing on March 10, 2022. At the hearing, Timothy Burns appeared for the Plaintiff and Pamela Tillman and Charles Spevacek appeared for the Defendant. The Court asked the parties to also consider remand under 28 U.S.C. § 1452(b) and extended the briefing deadline to March 15, 2022. The Court then took the matter under advisement once it received those briefs. Because U.S. Fire previously requested a jury trial, see, e.g., Dkt. No. 1, at PDF 193 (as the document does not contain consecutive page numbers, the Court will use the PDF page number), and because U.S. Fire has not consented to final orders or judgment by this Court, Dkt. Nos. 12 & 124, the Court is issuing a Report and Recommendation. 28 U.S.C. § 157(c)(1) & (e). For the reasons stated below, the Court recommends that the Motion to Dismiss for lack of subject matter jurisdiction be denied. The Court further recommends that the United States District Court for the District of Minnesota ("District Court") abstain from hearing the case and remand the case to the state court.

## BACKGROUND

To the extent 28 U.S.C. § 157(c)(1) requires proposed findings of fact, in addition to proposed conclusions of law, the relevant facts are not in dispute. They are included in this section and the Court submits them as proposed findings. To the extent relevant facts are included in other sections of this Report and Recommendation, the Court incorporates them herein.

The Diocese of Winona-Rochester ("Diocese" or "Debtor") is a Roman Catholic Diocese in Minnesota, with the episcopal see in Winona County. Second Amended Complaint, Dkt. No.

118, at 5, ¶ 20 [hereinafter, "Compl."]. U.S. Fire sold multiple insurance policies to the Diocese

with policy periods spanning from July 1, 1967 to July 1, 1978. Id., at 3, ¶ 9. Complete copies of

some of the policies have since been lost. Id., at 10–11, ¶ 43–44. Effective May 25, 2013, the

Minnesota Legislature enacted the Minnesota Child Victims Act, Minn. Stat. § 541.073, which

altered, expanded, and, in some circumstances, eliminated the statute of limitations applicable to

civil causes of action for damages based on sexual abuse. Compl., at 2, ¶ 2. As a result of that

legislation, the Diocese became subject to multiple claims and lawsuits alleging the

claimants/plaintiffs had suffered injuries resulting from sexual abuse by diocesan employees. Id.,

at 2, ¶ 3. The Diocese sought coverage of those claims and lawsuits from U.S. Fire under the

insurance policies. Id., at 3, ¶ 10.

Ultimately, the Diocese instituted this action on July 18, 2018 in state court in Winona

County, Minnesota seeking a declaratory judgment against U.S. Fire (and other insurers) regarding

rights, duties, and liabilities under certain insurance policies. Dkt. No. 1, at PDF 12–22; see also

Complaint for Declaratory Judgment, Diocese of Winona-Rochester v. U.S. Fire Ins. Co., No. 85-

CV-18-1439 (Minn. Dist. July 18, 2018), Index # 1. The Diocese sought a declaration that "the

Insurers are liable for the Underlying Actions and Claims ae [sic] required by the terms of the

Insurance Policies and Certificates." Dkt. No. 1, at PDF 21, ¶ 40. On November 7, 2018, the

Diocese filed an amended complaint dated August 3, 2018 seeking the same declaration. Id., at

PDF 373–83. Both the Diocese and U.S. Fire requested a jury trial. Id., at PDF 22, 193 & 383.

On November 30, 2018, the Diocese filed a voluntary petition for relief in the District of

Minnesota under Chapter 11 of the United States Bankruptcy Code. Voluntary Petition, In re

Diocese of Winona-Rochester, No. 18-33707 (Bankr. D. Minn. Nov. 30, 2018), Dkt. No. 1

[hereinafter, "Main Case"]. That same day, the Diocese filed a notice of removal pursuant to 28

U.S.C. §§ 1452 and 1334(b) ("Notice of Removal"). Dkt. No. 1, at PDF 1–6. Thus, the action was removed from state court and brought before this Court on December 3, 2018. Id., at PDF 428. While the Notice of Removal contains a statement regarding the existence of diversity jurisdiction under 28 U.S.C. § 1332, see Dkt. No. 1, at PDF 4, ¶ 8, the case was not removed by a defendant, as required, pursuant to 28 U.S.C. § 1441. It was removed by the plaintiff under the bankruptcy removal statute, 28 U.S.C. § 1452, in reliance on the bankruptcy jurisdiction statute, 28 U.S.C. § 1334(b).

Five months later, pursuant to the stipulation of the parties, the Court stayed proceedings while the parties engaged in mediation. Main Case, Dkt. No. 129, at 2, ¶ 4. Two years later, on April 13, 2021, and again pursuant to the stipulation of the parties, the Court lifted the stay of proceedings specifically as to U.S. Fire and 21st Century Centennial Insurance Company, formerly known as Colonial Penn Insurance Company. Dkt. No. 68. The Diocese reached a settlement with the other insurers, with the exception of Northwestern National Insurance Company of Milwaukee Wisconsin, Stronghold Insurance Co. Ltd., and Reinsurance Company Ltd., as those parties were subject to insolvency proceedings. Main Case, Dkt. No. 262, at 1 n.1. As of the date of this Report and Recommendation, the only remaining solvent defendant is U.S. Fire. All other defendants, have either been dismissed by stipulation, including 21st Century Centennial Insurance Company, or remain subject to insolvency proceedings. See, e.g., Dkt. Nos. 50–53, 95, 104 & 115.

After U.S. Fire denied coverage and refused to defend the Diocese against the approximately twenty-six (26) claims involving Father Thomas Adamson ("Adamson Claims"), the Diocese and other parishes and schools (collectively referred to in the pleadings as the "Diocesan Entities," but for ease, the Court will just use "Diocese" throughout, even though certain parishes and schools may be involved) engaged in extensive mediation with those holding

4

Adamson Claims ("Adamson Claimants"). Compl., at 13–14, ¶¶ 59–63. The Diocese reached settlements with the Adamson Claimants pursuant to Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982). Compl., at 14, ¶ 63; see also Main Case, Dkt. No. 348. The settlements provided for the entry of stipulated judgments. Compl., at 14, ¶ 65. The Adamson Claimants agreed not to seek recovery against the Diocese and to seek recovery only against U.S. Fire. Id. In turn, the Diocese assigned its claims and/or causes of action against U.S. Fire relating to or arising out of the Adamson Claims, including without limitation, claims for bad faith, failure to indemnify and/or settle the claims, and failure to defend directly to the Adamson Claimants. Id.

On October 11, 2021, the Diocese filed its Fifth Amended Joint Chapter 11 Plan of Reorganization ("Plan"). Main Case, Dkt. No. 398. The Court confirmed the Plan on October 14, 2021. Main Case, Dkt. No. 405. The Plan became effective on October 29, 2021. Main Case, Dkt. No. 413. The Plan established the Trust and appointed DW Harrow as Trustee. Main Case, Dkt. No. 398, Ex. D. Among other things, the Plan transferred the Diocese's insurance interests to the Trust. Main Case, Dkt. No. 398, at 28, § 5.1, ¶ 3 ("[T]he Transferred Insurance Interests of the Diocese are automatically and without further act or deed assigned and transferred to the Trust on the Effective Date."). The Plan gave DW Harrow, as Trustee, the "right to join or intervene into the Insurance Coverage Adversary Proceeding and to pursue recoveries against any Non-Settling Insurers to the same extent as the Debtor." Id., at 46, § 6.14(m). In other words, the Plan gave DW Harrow the right to litigate the dispute between U.S. Fire and the Adamson Claimants. Compl., at 5, ¶ 17. Accordingly, on December 3, 2021, the parties filed a stipulation providing for the substitution of DW Harrow for the Diocese as the plaintiff in this case. Dkt. No. 86. The Court entered an order allowing the substitution that same day. Dkt. No. 87.

The Plan provides that the Trust will pursue recovery for any settlements and judgments obtained by the Adamson Claimants. Compl., at 12, ¶ 53. This includes the stipulated judgments resulting from the <u>Miller v. Shugart</u> settlements. <u>Id.</u>; <u>see also</u> Main Case, Dkt. No. 398, at 23, § 4.3(c) ("If a Class 3 Claimant enters into such an agreement with the Diocese…the Trust will pursue any judgment against the Non-Settling Insurer on behalf of the Class 3 Claimant."). Any recoveries are to be distributed from the Trust to the survivors of sexual abuse. Compl., at 5, ¶ 17. The Plan retains bankruptcy jurisdiction over all adversary proceedings maintained pursuant to the Diocese's Chapter 11 case:

> [T]he Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:
>
> …
>
> [O]ver any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to this Chapter 11 case or the Plan, including, but not limited to, disputes arising out of or related to the Transferred Insurance Interests or the rights and obligations of the Non-Settling Insurers on and after the Effective Date.

Main Case, Dkt. No. 398, at 66, § 16.1(a), ¶ 21; Compl., at 6–7, ¶ 25; <u>see also</u> Main Case, Dkt. No. 398, at 65, § 16.1(a), ¶ 6 (retaining jurisdiction over "matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets").

Upon entering the case, DW Harrow filed an amended complaint alleging breach of contract and bad faith and seeking a declaratory judgment ("Amended Complaint"). Dkt. No. 97. While the Diocese originally requested a jury trial in the pleadings filed prior to removal, <u>see, e.g.</u>, Dkt. No. 1, at PDF 22 & 383, DW Harrow did not request a jury trial in the Amended Complaint. As mentioned above, U.S. Fire requested a jury trial in its original pleadings in state court. <u>Id.</u>, at PDF 193. The parties have agreed that U.S. Fire has a right to a jury trial if there are factual issues

and if the case indeed proceeds to trial. In response to DW Harrow's Amended Complaint, U.S. Fire filed the present Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 112.

After the filing of the Motion to Dismiss, but before the hearing, DW Harrow filed a second amended complaint ("Second Amended Complaint"). Dkt. No. 118. Again, DW Harrow did not request a jury trial. In the Second Amended Complaint, DW Harrow dropped the bad faith claims against U.S. Fire. Id. Pursuant to its powers under the Plan, DW Harrow now seeks: (1) damages against U.S. Fire for breach of contract arising from U.S. Fire's failure to defend the Adamson Claims; (2) a declaration that the Miller v. Shugart settlements and stipulated judgments are reasonable and enforceable; and (3) a declaration regarding the existence of certain lost insurance policies and the extent of their coverage. Compl., at 21–22, ¶ 94(a)–(e). Therefore, the portion of the Motion to Dismiss seeking dismissal based on Federal Rule of Civil Procedure 12(b)(6) is moot. The only remaining potential basis for dismissal is lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The parties agreed the Motion to Dismiss would fully apply to the Second Amended Complaint. Dkt. No. 129. The parties further agreed to go forward with the hearing and oral argument as scheduled. The Court heard oral argument on February 9, 2022.

After oral argument, in its order dated February 16, 2022, the Court invited the parties to brief permissive abstention under 28 U.S.C. § 1334(c)(1) by February 25, 2022. Dkt. No. 132. In response to the Court's invitation, the parties filed a stipulation requesting that the Court deny the Motion to Dismiss as moot and transfer the case to the District Court ("Stipulation"). Dkt. Nos. 132–33. The Court held a hearing on the Stipulation on March 10, 2022, at which time the Court explained that while transfer appears appropriate under Local Rule 5011-3 since there appears to

be a jury trial right, the Court will not transfer the case to the District Court until the case is trial ready. That is, and always has been, the standard practice in the District of Minnesota. See, e.g., Ries v. Jacobs, 12-CV-1628 (JNE), 2012 WL 3184795, at *1 (D. Minn. Aug. 2, 2012) ("The transfer to the District Court is premature at this early stage in the adversary proceeding. The interests of judicial economy are best served by returning the proceeding to the Bankruptcy Court to utilize that court's expertise until the proceeding is ready for trial."); Ritchie Cap. Mgt., L.L.C. v. JPMorgan Chase & Co., CV 14-4786 (DWF/FLN), 2015 WL 12540194, at *4 (D. Minn. July 2, 2015) (Local Rule 5011-3 "does not impact the bankruptcy court's work prior to trial on a case."). This was the same reason Bankruptcy Judge Robert J. Kressel (the predecessor judge in this case) denied the motion to transfer at Docket No. 18. Dkt Nos. 34–35.

Over time, there were three attempts by the defendant insurers to move the case to the District Court, either by transfer or withdrawal of reference. Dkt. Nos. 18, 37 & 65. All three attempts were unsuccessful. Dkt. Nos. 35, 48 & 73. As of the date of this Report and Recommendation, another motion to withdraw reference filed by U.S. Fire is pending in the District Court. Dkt. No. 110; see also Motion to Withdraw Reference, DW Harrow & Assocs., LLC v. U.S. Fire Ins. Co., No. 22-CV-374 (JNE) (D. Minn. Feb. 8, 2022), Dkt. No. 1.

After that discussion at the March 10, 2022 hearing, the Court asked the parties to also consider remand under 28 U.S.C. § 1452(b) (in addition to permissive abstention) and extended the briefing deadline to March 15, 2022. The Court then took the matter under advisement upon receiving the parties' briefs.

## DISCUSSION

### I.    Legal Standard For A Rule 12(b)(1) Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(1), as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), allows a defendant to challenge whether a court has subject matter jurisdiction to decide the case. A challenge to a court's subject matter jurisdiction is a threshold issue. Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1141 (8th Cir. 1998). While the parties attempted to use the Stipulation to resolve the Motion to Dismiss, the Court cannot simply ignore a challenge to its subject matter jurisdiction. See Pac. Nat'l Ins. Co. v. Transp. Ins. Co., 341 F.2d 514, 516 (8th Cir. 1965), cert. denied, 381 U.S. 912 (1965) ("[J]urisdiction may not be conferred by consent and lack of jurisdiction of the subject matter cannot be waived by the parties or ignored by the court; if jurisdiction is lacking the trial court should on its own motion decline to proceed…"). Even if the Court did immediately transfer the case to the District Court pursuant to Local Rule 5011-3, the issue of federal subject matter jurisdiction under 28 U.S.C. § 1334(b) would remain. Section 1334(b) describes the jurisdiction of the "district courts" and then 28 U.S.C. § 157(a) permits referral to the bankruptcy courts. Because subject matter jurisdiction is a threshold issue, the Court must address it at the outset.

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). In a facial attack, the court examines the complaint to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, accepting all factual allegations in the complaint as true. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914–15 (8th Cir. 2015). In a factual attack, the court may examine matters outside of the pleadings, such as affidavits and testimony, to determine if subject matter

jurisdiction exists as a matter of fact. Id. at 915. Unlike a facial attack, in a factual attack, the plaintiff does not enjoy the benefit of the allegations in its pleadings being accepted as true for purposes of the court's review. Id.

U.S. Fire classifies the Motion to Dismiss as a facial attack. Dkt. No. 112, at PDF 7 (the PDF page number) ("The undisputed facts relevant to this motion are few, simple, and come straight from the allegations in Plaintiff's [Second] Amended Complaint."); id. ("Where a moving party challenges the Court's subject-matter jurisdiction on the face of the complaint…"). In contrast, DW Harrow seemingly classifies the Motion to Dismiss as a factual attack. Dkt. No. 122, at 3 ("Therefore, in a factual attack, the court may review matters outside the pleadings to determine whether jurisdiction exists."). The Court finds that while U.S. Fire nominally classifies the Motion to Dismiss as a facial attack, U.S. Fire cites a large portion of the Plan not included in the Second Amended Complaint in its reply to DW Harrow's objection. Dkt. No. 125, at 8. Because the Court must look outside the four corners of the Second Amended Complaint to resolve U.S. Fire's challenge to subject matter jurisdiction, the Court considers the challenge to be factual and will treat it as such. With that said, however, the Court believes it would reach the same conclusion even if it were to treat the Motion to Dismiss as a facial attack.

## II. Bankruptcy Jurisdiction Generally Under 28 U.S.C. § 1334(b)

It is well established that federal courts are courts of limited jurisdiction and "they possess only that power authorized by [the] Constitution and statute[s][.]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995) ("The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."). "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction[.]" Ark. Blue Cross & Blue

Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009). The party must prove that jurisdiction exists by a preponderance of the evidence. Richardson v. BNSF Ry. Co., 2 F.4th 1063, 1067 (8th Cir. 2021). Congress has vested the federal district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Each district court may refer "all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11…to the bankruptcy judges for the district." Id. § 157(a). The District Court has exercised that authority and refers all such cases to the bankruptcy judges of this Court. See Local Rule 1070-1 ("All bankruptcy cases and proceedings…are referred to the bankruptcy judges.").

Both parties agree the Court's "related to" jurisdiction under 28 U.S.C. § 1334(b) is at issue here. "Related to" jurisdiction can include suits between parties other than the bankruptcy debtor. Celotex, 514 U.S. at 307 n.5. Section 157(c)(1) provides that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). Nevertheless:

> In such [a] proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Id. That is, unless all parties consent. Id. § 157(c)(2). Likewise, a bankruptcy court lacks the constitutional authority to enter a final order or judgment in a proceeding over which it only has "related to" jurisdiction, unless all parties consent. Stern v. Marshall, 564 U.S. 462 (2011). The Court agrees with U.S. Fire that the Court "lacks constitutional jurisdiction to render a final decision over the non-core matters raised in the [Second] Amended Complaint." Dkt. No. 112, at PDF 12. Both statutorily and constitutionally, "related to" jurisdiction (sometimes referred to as

"non-core" jurisdiction) is more limited than "arising in" or "arising under" jurisdiction (sometimes referred to as "core" jurisdiction).

## III.    "Related To" Jurisdiction After Plan Confirmation

Generally, once a Chapter 11 plan has been confirmed, "the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist." In re D & P P'ship, 91 F.3d 1072, 1074 (8th Cir. 1996); see also 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."). However, there are certainly exceptions to that rule. Despite those exceptions, U.S. Fire repeatedly argued in the Motion to Dismiss and at oral argument that the Diocese's estate ceased to exist after plan confirmation and, therefore, there can be no subject matter jurisdiction. See Dkt. No. 112, at PDF 14. In support of that proposition, U.S. Fire cites to In re Fairfield Cmtys., Inc., 142 F.3d 1093, 1095 (8th Cir. 1998). Yet, Fairfield itself provides an exception. Id. (describing how the bankruptcy court can retain jurisdiction post-confirmation). As a whole, Eighth Circuit precedent makes clear that a bankruptcy court can have jurisdiction to hear "related to" matters after plan confirmation. See In re D & P P'ship, 91 F.3d at 1074; In re Fairfield Cmtys., Inc., 142 F.3d at 1095; In re Farmland Indus., Inc., 567 F.3d 1010, 1020 (8th Cir. 2009). That is uniformly recognized among other courts. See, e.g., In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004); In re U.S. Brass Corp., 301 F.3d 296, 304 (5th Cir. 2002); In re Thickstun Bros. Equip. Co., Inc., 344 B.R. 515, 522 (B.A.P. 6th Cir. 2006); In re Pegasus Gold Corp., 394 F.3d 1189, 1194 (9th Cir. 2005). With that said, the question is whether "related to" jurisdiction exists in this case post-confirmation.

Because 28 U.S.C. §§ 1334 and 157 do not define "related to" jurisdiction, two tests have emerged for determining whether "related to" jurisdiction exists post-confirmation: (1) the broad

"conceivable effect" test; and (2) the stricter "close nexus" test (or some version of it). See, e.g., Nat'l City Bank v. Coopers & Lybrand, 802 F.2d 990, 994 (8th Cir. 1986) ("conceivable effect" test); In re Dogpatch U.S.A., Inc., 810 F.2d 782, 786 (8th Cir. 1987) ("conceivable effect" test); United States v. Unger, 949 F.2d 231, 234 (8th Cir. 1991) ((citing In re Johns-Manville Corp., 97 B.R. 174, 180 (Bankr. S.D.N.Y. 1989)) (version of "close nexus" test); In re D & P P'ship, 91 F.3d at 1074 (version of "close nexus" test). While the "conceivable effect" test is commonly used pre-confirmation, the "close nexus" test (or some version of it) is commonly used post-confirmation in other jurisdictions. See In re Resorts Int'l, Inc., 372 F.3d at 163–69 (providing a comprehensive discussion on the reasons for having two different tests for pre- and post-confirmation).

The Eighth Circuit has often employed the "conceivable effect" test after plan confirmation. See, e.g., Nat'l City Bank, 802 F.2d at 994; In re Dogpatch U.S.A., Inc., 810 F.2d at 786; Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC, 417 F.3d 953, 958 (8th Cir. 2005); In re Farmland Indus., Inc., 567 F.3d at 1018–20; see also In re RFC & ResCap Liquidating Tr. Litig., 13-CV-3451 (SRN/HB), 2017 WL 3129748, at *5 (D. Minn. July 21, 2017) ("Farmland is significant for its application of the 'any conceivable effect' test after a plan's confirmation."). The "conceivable effect" test provides that:

> [A] civil proceeding is related to bankruptcy…[where] the outcome of that proceeding could *conceivably have any effect on the estate* being administered in the bankruptcy…An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action…and which in any way impacts upon the handling and administration of the bankruptcy estate.

In re Farmland Indus., Inc., 567 F.3d at 1019 (quoting Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 774 (8th Cir. 1995) (Chapter 7 case)) (emphasis in original). Because there is no bankruptcy estate after plan confirmation, to the extent the Court uses the word "estate," it means the Trust's liquidation and distribution of assets to the Diocese's creditors.

While not specifically referring to the "close nexus" test, the Eighth Circuit has also employed a version of that test after plan confirmation. See, e.g., In re Fairfield Cmtys., Inc., 142 F.3d at 1095. Under the "close nexus" test used by most courts in other jurisdictions, "the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan or incorporated litigation trust agreement." In re Ener1, Inc., 558 B.R. 91, 96 (Bankr. S.D.N.Y. 2016). In Fairfield, the Eighth Circuit stated that "even after the confirmation of a debtor's plan, 'a bankruptcy court may explicitly retain jurisdiction [by stating so in the order confirming the plan] over aspects of a plan related to its administration and interpretation.'" In re Fairfield Cmtys., Inc., 142 F.3d at 1095 (citing In re D & P P'ship, 91 F.3d at 1074). Thus, the Eighth Circuit appears to have used, on occasion, a version of the "close nexus" test, focusing on whether the proceeding relates to the administration or interpretation of the plan. But see In re Craig's Stores of Tex., Inc., 266 F.3d 388, 390 (5th Cir. 2001) (citing Fairfield for the proposition that bankruptcy jurisdiction continues over "matters pertaining to the implementation or execution of the plan"). Because this inquiry so closely resembles the "close nexus" test, the Court will treat it as such. See In re Wigley, 624 B.R. 861, 868 (Bankr. D. Minn. 2021) (citing the "close nexus" test); ResCap Liquidating Tr. v. U.S. Bank, N.A., CV 16-4067 (PAM/HB), 2017 WL 2437242, at *3 (D. Minn. June 5, 2017) ("Defendants have not established that the Eighth Circuit's test [in Fairfield] is in fact substantially narrower than the 'close nexus' requirement from the Second Circuit.").

In addition to requiring a "close nexus" to the bankruptcy, some courts also require a subject matter jurisdiction retention provision in the confirmed plan or confirmation order covering the dispute. This results in a two-part test, the first prong of which includes the "close nexus" test. See, e.g., In re Ener1, Inc., 558 B.R. at 96 ("First, the matter must have a close nexus to the

bankruptcy plan or proceeding…Second, the plan must provide for the retention of jurisdiction over the dispute."). It is unclear whether the Eighth Circuit requires a retention provision, though Fairfield could plausibly suggest that some form of retention is required. In re Fairfield Cmtys., Inc., 142 F.3d at 1095. The Court does not need to decide whether the Eighth Circuit requires a retention provision since there are retention provisions in the Plan (discussed in more detail below).

Because the Eighth Circuit has used both the "conceivable effect" test and the "close nexus" test post-confirmation, the Court will analyze both tests. See ResCap Liquidating Tr., 2017 WL 2437242, at *2–3; In re RFC, 2017 WL 3129748, at *3, *5–6; Greenpond S., LLC v. Gen. Elec. Cap. Corp., 14-CV-1214 (SRN/TNL), 2015 WL 225227, at *4, *5 n.1 (D. Minn. Jan. 16, 2015). Moreover, the Court will analyze the retention provisions in the Plan because some courts require a retention provision and such a provision can limit the exercise of subject matter jurisdiction. See In re Wigley, 624 B.R. at 871 (where the retention provision in the plan did not cover the claims at issue). Under the "conceivable effect" test or the "close nexus" test, DW Harrow meets its burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. The Court begins its analysis with the more stringent "close nexus" test.

### A. "Close Nexus" Test

U.S. Fire argues "there is no nexus to the estate at all." Dkt. No. 125, at 1–2. Conversely, DW Harrow asserts "the insurance adversary proceeding has a 'close nexus' to the bankruptcy case." Dkt. No. 122, at 1. The Court finds the "close nexus" test is satisfied.

This action affects the implementation and administration of the Plan. The Plan specifically defined "Insurance Coverage Adversary Proceeding" as:

> the Adversary Proceeding against United States Fire Insurance Company and others, removed by the Diocese from the State of Minnesota, County of Winona, Third Judicial District Court, to Minnesota Federal District Court and referred to the Bankruptcy Court as Adv. Proceeding No. 18-03094.

15

Main Case, Dkt. No. 398, at 8, § 1.1, ¶ 53. As mentioned previously, the Plan gave the Trustee the right to "intervene into the Insurance Coverage Adversary Proceeding and to pursue recoveries against any Non-Settling Insurers *to the same extent as the Debtor*." Id., at 46, § 6.14(m) (emphasis added). Article V of the Plan expressly contemplates the creation of the Trust as a means for implementing the Plan. Id., at 26. Article V is titled "MEANS OF IMPLEMENTATION OF THE PLAN." Id. It provides that "[t]he Trust shall be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan and the Trust Distribution Plan." Id. § 5.1(a). "Trust Assets" include "Transferred Insurance Interests," which include "all claims and causes of action that currently exist or may arise in the future against Non-Settling Insurers," like U.S. Fire. Id. § 1.1, ¶¶ 106 & 109, at 15–16. That would include this adversary proceeding. See ResCap Liquidating Tr., 2017 WL 2437242, at *3 ("Because RFC's bankruptcy plan set up a trust specifically to pursue these cases, they are also related to the administration of that bankruptcy plan."). Resolution of the claims at issue would have a "substantial effect on the success of the Plan." In re Resorts Int'l, Inc., 372 F.3d at 170. Counts I–III relate to pre-confirmation conduct. See In re Fairfield Cmtys., Inc., 142 F.3d at 1096 (finding no subject matter jurisdiction where the claims were based on post-confirmation conduct).

Further, there is no dispute that the Plan incorporates the trust agreement and trust distribution plan attached to the Plan as Exhibit D ("Trust Agreement and Trust Distribution Plan"). Main Case, Dkt. No. 398, at 18, § 1.4(a) ("All Exhibits and Schedules to the Plan…are hereby incorporated by reference and made part of the Plan as if set forth fully herein."). This action affects the implementation and execution of that Trust Agreement and Trust Distribution Plan. The Trust Agreement provides that one purpose of the Trust is to "to pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests." Id., Ex. D, §

16

1.2. The Trust is pursuing such recoveries through this action. U.S. Fire acknowledges that "[t]he Trust has been created and is and will be evaluating and paying claims as the parties agreed." Dkt. No. 125, at 4. This action represents the Trust's efforts toward doing just that. U.S. Fire argues the Trust is not a true liquidation or litigation trust. See, e.g., Dkt. No. 125, at 6 ("RFC does not, therefore, support an inference that the Trust in this case is tantamount to a liquidation or litigation trust…"). However, the Court is not persuaded. The Court finds it has "related to" jurisdiction under 28 U.S.C. § 1334(b) because there is a "close nexus to the bankruptcy plan or proceeding." The Court will now address the retention provisions in the Plan.

**B.    Retention Provisions**

The Plan contains two applicable retention provisions. First, the Plan provides for continuing jurisdiction over "matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets." Main Case, Dkt. No. 398, at 65, § 16.1(a), ¶ 6. Second, the Plan retains bankruptcy jurisdiction over all adversary proceedings maintained pursuant to the Diocese's Chapter 11 case:

> [T]he Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:
>
> …
>
>  [O]ver any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to this Chapter 11 case or the Plan, including, but not limited to, disputes arising out of or related to the Transferred Insurance Interests or the rights and obligations of the Non-Settling Insurers on and after the Effective Date.

Id., at 66, § 16.1(a), ¶ 21; Compl., at 6–7, ¶ 25. Both provisions provide for the retention of jurisdiction over the current action.

U.S. Fire acknowledges "[t]he Plan does contain a retention of jurisdiction provision that purports to retain jurisdiction over coverage disputes." Dkt. No. 125, at 6. However, U.S. Fire

argues that provision is "non-binding" and "[b]ecause no court can simply create its own jurisdiction, whether a retention of jurisdiction provision is enforceable hinges on whether the bankruptcy court has jurisdiction under 28 U.S.C. §§ 1334 and 157." Id. at 6–7. In support for its "non-binding" argument, U.S. Fire cites to Section 8.4 of the Plan, which provides (in part) that nothing in the Plan or the Trust Agreement and Trust Distribution Plan "(i) shall affect, impair, or prejudice the rights and defenses of any Non-Settling Insurer against the Debtor or any other insureds under any Non-Settling Insurer Policies, including any factual or legal defenses to any claim for insurance…" Main Case, Dkt. No. 398, at 54, § 8.4.

The retention provision(s) do not prejudice U.S. Fire's lack of subject matter jurisdiction defense because U.S. Fire is exactly right, no court can create its own jurisdiction. The retention provisions would be irrelevant if the Court did not have subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157. The retention requirement goes to cases where a court might have jurisdiction post-confirmation, but where the exercise of such jurisdiction was not otherwise retained in the confirmed plan or confirmation order. See In re Thickstun Bros. Equip. Co., Inc., 344 B.R. at 522 ("While the effect of such provisions would not be to deprive the court of jurisdiction otherwise afforded by 28 U.S.C. § 1334, retention of jurisdiction provisions might condition or limit the court's *exercise* of post-confirmation jurisdiction.") (emphasis in original). Here, the Plan clearly retains jurisdiction over this action. The Court will now analyze the broader "conceivable effect" test.

### C.    "Conceivable Effect" Test

U.S. Fire contends that "[b]ecause the matters raised in the [Second] Amended Complaint are non-core matters that have no conceivable impact on the bankruptcy estate, this Court lacks jurisdiction to hear the dispute." Dkt. No. 112, at PDF 9. Conversely, DW Harrow goes a step

18

beyond the test and argues "this insurance action *will* impact the Estate" and "this Court has jurisdiction over the matter." Dkt. No. 122, at 4 (emphasis in original). The Court finds this action could have a conceivable effect on the bankruptcy estate.

In applying that test to the facts of this case, it appears this case could be decided on the same grounds as U.S. District Court Judge Susan R. Nelson's decision in RFC, 2017 WL 3129748, at *3, a remarkably similar case. See also In re RFC & ResCap Liquidating Tr. Litig., 13-CV-3451 (SRN/JJK), 2015 WL 2373401, at *5 (D. Minn. May 18, 2015). RFC filed for Chapter 11 relief on May 14, 2012 and its plan became effective on December 17, 2013. In re RFC, 2017 WL 3129748, at *1. Pursuant to the plan, a trust "succeeded to all of RFC's rights and interests" and the purpose of that trust was to "monetize RFC's remaining assets, pursue claims in litigation, and distribute the proceeds to RFC's creditors." Id. The trust brought a breach of contract claim and an indemnification claim against two of RFC's lenders. Id. One of the lenders brought a motion to dismiss asserting lack of subject matter jurisdiction. Id. Judge Nelson applied the "conceivable effect" test and denied the motion to dismiss for three reasons: (1) "the [p]lan expressly preserved RFC's claims and transferred them to the [t]rust to pursue"; (2) "the [p]lan provided for RFC's creditors to share in any recovery obtained by the [t]rust"; and (3) "the [p]lan expressly provided for the retention of jurisdiction over the claims, and the claims fell within the scope of the [p]lan." Id. at *3. This case meets the same three factors.

While the Court is technically not bound by the RFC decision, the Court finds the decision highly persuasive and will follow it. First, the Plan expressly preserves the insurance claims at issue and transfers those claims to the Trust to be pursued on behalf of the Diocese's creditors—namely, the sexual abuse survivors. Main Case, Dkt. No. 398, at 28, § 5.1, ¶ 3 ("[T]he Transferred Insurance Interests of the Diocese are automatically and without further act or deed assigned and

transferred to the Trust on the Effective Date."). Second, the Plan provides for the Diocese's creditors to share in any recovery obtained by the Trust. Compl., at 5, ¶ 17; Main Case, Dkt. No. 398, at 23, § 4.3(c) ("Any recoveries by the Trust from Non-Settling Insurers will become Trust Assets to be distributed pursuant to the Trust Distribution Plan."); see In re Reeves, 65 F.3d 670, 675 (8th Cir. 1995) ("An action is related to the bankruptcy case if it affects the amount of property available for distribution or the allocation of property among creditors.") (internal quotation omitted). Finally, the Plan expressly provides for the retention of jurisdiction over the claims, and the claims fall within the scope of the Plan. Compl., at 6–7, ¶ 25; see also Main Case, Dkt. No. 398, at 66, § 16.1(a), ¶ 21.

When asked at oral argument why the Court should not rely on RFC, U.S. Fire argued RFC involved a true liquidating trust, whereas the Trust in this case is just liquidating insurance assets and the Diocese is still in existence as the reorganized Debtor. Yet, more than just insurance assets were transferred to the Trust for liquidation and distribution. See Main Case, Dkt. No. 398, at 16, § 1.1, ¶ 109 (defining "Trust Assets" as "cash, Transferred Insurance Interests and other assets and rights to be transferred to the Trust under Article V of the Plan"). Further, the very purpose of the Trust is to "receiv[e], liquidat[e], and distribut[e] Trust Assets." Id. at 26, § 5.1(a). The fact that there is a reorganized debtor in existence may be a difference, but one that does not change the analysis.

If DW Harrow prevails on Count I (damages for breach of contract), there could potentially be a recovery that could be distributed to the Adamson Claimants. In other words, property would be available for distribution to some of the Diocese's creditors. Alternatively, if DW Harrow loses, the potential recovery available to the Adamson Claimants will be diminished. Based on Count I alone, it is hard to see how the outcome of this proceeding would not have a conceivable effect on

20

the bankruptcy estate (i.e., the estate's successor and the distribution to creditors). For these reasons, the Court finds that subject matter jurisdiction exists under the "conceivable effect" test. The Court will now address U.S. Fire's arguments to the contrary.

In the Motion to Dismiss, U.S. Fire makes the following arguments: (1) this is an "entirely new action" because the Second Amended Complaint contains new claims not found in the original complaint; (2) the Diocese "has been released, or has received the benefits of covenants not to sue or collect, and is no longer in bankruptcy"; and (3) the new claims present "non-core coverage issue[s]" that do "not depend on or affect any aspect of the now-closed bankruptcy case." Id. at PDF 12–14.

First, an action's "newness" does not necessarily determine whether subject matter jurisdiction exists and, in any event, the Court disagrees with U.S. Fire's characterization of this action as "entirely new." Id., at PDF 12. It is true that in the original state court complaint, the Diocese sought a declaration that "the Insurers are liable for the Underlying Actions and Claims ae [sic] required by the terms of the Insurance Policies and Certificates." Dkt. No. 1, at PDF 21, ¶ 40; see also id., at PDF 382, ¶ 40. It is also true that in the Second Amended Complaint, DW Harrow now seeks: (1) damages against U.S. Fire for breach of contract arising from U.S. Fire's failure to defend the Adamson Claims; (2) a declaration that the Miller v. Shugart settlements and stipulated judgments are reasonable and enforceable; and (3) a declaration regarding the existence of certain lost insurance policies and the extent of their coverage. Compl., at 21–22, ¶ 94(a)–(e). Even though the claims have evolved (and DW Harrow has been substituted in as a party), the underlying dispute and the facts giving rise to the dispute remain largely the same. U.S. Fire acknowledges in the Motion to Dismiss that "[t]his insurance dispute pre-dates the Diocese's bankruptcy proceedings." Dkt. No. 112, at PDF 5–6. In other words, this action dates back to 2018.

Therefore, while certain claims might be "new," this action is certainly not "entirely new" as it all relates to coverage issues. Even if it was "entirely new," that would not preclude a finding of subject matter jurisdiction. In RFC, the lawsuits were commenced post-confirmation. In re RFC, 2015 WL 2373401, at *2. The bankruptcy case was filed on May 14, 2012; the plan was confirmed on December 11, 2013; the plan became effective on December 17, 2013; and the lawsuits were commenced on May 13, 2014. Judge Nelson still found there was subject matter jurisdiction even though the lawsuits were commenced after plan confirmation. Id., at *1–2.

Second, it may be true that the Diocese "has been released, or has received the benefits of covenants not to sue or collect," but that also does not preclude a finding of subject matter jurisdiction. Whether this proceeding would alter the Diocese's liabilities is only one consideration of many. The test is whether the outcome of this proceeding could have a conceivable effect "on the estate being administered in the bankruptcy." In re Farmland Indus., Inc., 567 F.3d at 1019 (quoting Specialty Mills, Inc., 51 F.3d at 774)). This involves a consideration of the Diocese's rights, options, or freedom of action, in addition to liabilities. Id. (quoting Specialty Mills, Inc., 51 F.3d at 774). For instance, the Diocese had the right to seek a declaratory judgment as to the existence of certain lost insurance policies and the extent of their coverage. That right was assigned to the Trust and the Trust now seeks a declaratory judgment on the Diocese's behalf. A determination as to the existence of such policies and the extent of their coverage could conceivably affect the recovery available to the Diocese's creditors and, hence, have an impact on the administration of the bankruptcy estate. Moreover, contrary to U.S. Fire's assertions that the Diocese is "no longer in bankruptcy" and the bankruptcy case is now closed, the Diocese's bankruptcy case is still open. In fact, the Diocese just filed a quarterly distribution report on April 20, 2022. Main Case, Dkt. No. 441. A final report has not been filed. See Fed. R. Bankr. P. 3022

("After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.").

Third, the fact that the new claims present "non-core coverage issues" is not dispositive. The "core" versus "non-core" distinction does not determine whether subject matter jurisdiction exists under 28 U.S.C. § 1334(b), as there clearly can be subject matter jurisdiction over non-core proceedings. Because the Court has determined that "related to" jurisdiction exists, the presence of "non-core coverage issues" is immaterial.

In the Motion to Dismiss, U.S. Fire primarily relies on In re A.P.I., Inc., 537 B.R. 902 (Bankr. D. Minn. 2015), to support its position. However, A.P.I. is a much different case. In A.P.I., the bankruptcy court confirmed the debtor's plan of reorganization on December 6, 2005 and the debtor's case was closed on February 29, 2008. Id. at 904. The lawsuit at issue was not commenced until June 2015—ten years after confirmation of the debtor's plan and seven years after the closing of the debtor's case. Id. The lawsuit was commenced by a law firm that provided services to the debtor and to the established trust seeking an attorney's lien against trust assets for unpaid compensation. Id. The court found "there is no longer a bankruptcy estate in administration in the [d]ebtor's case" and "[t]here has not been for nearly a decade." Id. at 909. The court ruled it lacked subject matter jurisdiction and remanded the case to the state court. Id. at 913.

As an initial matter, if the A.P.I. court's comments regarding termination of the bankruptcy estate were taken literally (which is almost certainly unintended), subject matter jurisdiction would never exist post-confirmation. See In re Marine Iron & Shipbuilding Co., 104 B.R. 976, 983 (D. Minn. 1989) (adopting a report and recommendation by the author of A.P.I. (Bankruptcy Judge Gregory F. Kishel) which recognizes "there is no longer a bankruptcy estate in administration," but finds "pursuant to the terms of its confirmed liquidating plan, [the] [d]ebtor is administering

assets to fund a mandatory distribution to its unsecured creditors," and therefore concludes "related to" jurisdiction exists). As Judge Nelson stated in RFC, the Court "disagrees that 'related to' bankruptcy jurisdiction automatically and invariably dissipates when a bankruptcy plan is confirmed." In re RFC, 2017 WL 3129748, at *3. Eighth Circuit precedent makes clear that subject matter jurisdiction can exist post-confirmation.

Moreover, the current action is very different from A.P.I. This action was originally commenced in 2018 and the Diocese's bankruptcy case remains open. Most, if not all, of the Miller v. Shugart settlements were reached prior to confirmation, even if some of the stipulated judgments were not formally entered until after confirmation. Further, the right to seek recovery of the stipulated judgments pursuant to the Miller v. Shugart settlements was assigned to the Trust. The Diocese's insurance interests were transferred to the Trust in the Plan and the Trust is pursuing those interests on behalf of the sexual abuse survivors. In contrast, the right to assert an attorney's lien in A.P.I. belonged to the law firm, not to the trust. See In re RFC, 2017 WL 3129748, at *3 (distinguishing A.P.I. on those grounds). As to Count II, the reasonableness and enforceability of the Miller v. Shugart settlements and stipulated judgments, U.S. Fire writes, "Notably, this claim never belonged to the bankruptcy estate; claims for collection of the Miller-Shugart settlements belong to the creditors that are claimants against the Trust." Dkt. No. 112, at PDF 14. This argument is unavailing for three reasons. First, as a party to the Miller v. Shugart settlements, the bankruptcy estate had the right to seek a declaration that such settlements were reasonable and enforceable. That right now belongs to the Trust. Second, the claims that were assigned pursuant to the Miller v. Shugart settlements did originally belong to the bankruptcy estate. Third, the Plan gave the Trust the right to pursue collection of the resulting stipulated judgments on behalf of the

creditors. Compl., at 12, ¶ 53; <u>see also</u> Main Case, Dkt. No. 398, at 23, § 4.3(c). In sum, this case does not resemble <u>A.P.I.</u>

Because the Court has concluded it has subject matter jurisdiction under 28 U.S.C. § 1334(b), any other potential jurisdictional grounds (such as diversity jurisdiction under 28 U.S.C. § 1332) are irrelevant. Further, the Court notes that even if it lacks subject matter jurisdiction, the outcome would likely be the same: remand (see below). <u>See</u> 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."); <u>id.</u> § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); <u>see also</u> <u>Things Remembered, Inc. v. Petrarca</u>, 516 U.S. 124, 128–29 (1995) (holding that 28 U.S.C. § 1452 is not the exclusive provision governing removals and remands in bankruptcy). At the same time, however, the Court recognizes that the abstention portion of the following section is predicated on the existence of subject matter jurisdiction.

## IV.    Abstention And Remand

Whether a court can preside over an action and whether a court should preside over an action are two separate issues. After oral argument, it appeared U.S. Fire's arguments went more to abstention than subject matter jurisdiction. While no party initially raised the issue of permissive abstention under 28 U.S.C. § 1334(c)(1), this Court raised the issue *sua sponte* in an order dated February 16, 2022. Dkt. No. 132; <u>see</u> <u>In re Sears</u>, 539 B.R. 368, 372 (D. Neb. 2015) ("A bankruptcy court may reach the issue of abstention *sua sponte,* but only if the parties have advance notice that the court is considering abstention."). The Court invited the parties to brief the twelve permissive abstention factors, <u>see, e.g.</u>, <u>In re Williams</u>, 256 B.R. 885, 894 (B.A.P. 8th Cir. 2001), by February 25, 2022. Dkt. No. 132. In response to the Court's invitation, the parties filed the Stipulation

instead. Dkt. No. 133. At the March 10, 2022 hearing, the parties were given until March 15, 2022 to file their abstention briefs. The Court asked the parties to also consider equitable remand under 28 U.S.C. § 1452(b), since the analysis is largely the same. See In re Sears, 539 B.R. at 371–72 ("The analysis used to determine whether equitable remand under § 1452(b) is appropriate is virtually identical to the permissive abstention analysis, with the consideration of four additional factors."); see also In re Burrow, 505 B.R. 838, 849–50 (Bankr. E.D. Ark. 2013).

### A.    Permissive Abstention Under 28 U.S.C. § 1334(c)(1)

The Court will first address permissive abstention. While some circuits have held that abstention does not apply in removed cases, see, e.g., Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1009 (9th Cir. 1997), courts within the Eighth Circuit have declined to follow that position. See, e.g., In re Turner Grain Merch., Inc., 545 B.R. 261, 273 (Bankr. E.D. Ark. 2016). The Court will do the same. Section 1334(c)(1) provides that a district court, "in the interest of justice, or in the interest of comity with State courts or respect for State law," may abstain "from hearing a particular proceeding…related to a case under title 11." 28 U.S.C. § 1334(c)(1); see also id. § 1334(d) ("Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal[.]"). There are twelve factors for a court to consider in deciding whether to abstain:

1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;
2) the extent to which state law issues predominate over bankruptcy issues;
3) the difficult or unsettled nature of the applicable law,
4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
6)  the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7) the substance rather than the form of an asserted "core" proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9) the burden [on] the bankruptcy court's docket;

10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties;

11) the existence of a right to a jury trial; and

12) the presence in the proceeding of nondebtor parties.

In re Williams, 256 B.R. at 894 (internal citations omitted). "Courts should apply these factors flexibly as their relevance and importance will vary depending on the specific facts of each case and no one factor is determinative." In re Kesar Enters., Inc., 330 B.R. 756, 761 (Bankr. W.D. Mo. 2005). U.S Fire analyzes all twelve factors and asserts that "almost all weigh in favor of abstention." Dkt. No. 140, at 15. In contrast, DW Harrow relies on factors one and three in urging the Court not to abstain. Dkt. No. 139, at 3–4. The Court agrees with U.S. Fire.

## 1.   Effect On Administration Of Estate

The Court does not perceive any negative effect on the efficient administration of the bankruptcy estate upon abstention. The Plan has been confirmed. Main Case, Dkt. No. 413; see In re Finstad, 613 B.R. 180, 183–84 (B.A.P. 8th Cir. 2020) ("[U]pon confirmation, a plan serves as a new contract between the debtor and the parties whose claims are addressed in the plan and state courts have jurisdiction to interpret post-confirmation contracts."). This factor supports abstention.

## 2.   State Law vs. Bankruptcy Law

All remaining claims arise under state law and do not implicate bankruptcy law. As a separate, but related issue, the Diocese argues "the two cases primarily relied upon by U.S. Fire to support its denial of coverage for the Adamson [C]laims are *federal decisions*[.]" Dkt. No. 139, at 3 (emphasis in original). However, those federal decisions involve state law. See Diocese of Winona v. Interstate Fire & Cas. Co., 89 F.3d 1386, 1394 (8th Cir. 1996) ("In light of these undisputed facts, we hold *as a matter of Minnesota law* that Adamson's abuse of Mrozka was

27

expected by the Diocese for purpose of determining whether there was an occurrence under the policies in question.") (emphasis added); U.S. Fire Ins. Co. v. Diocese of Winona, Inc., 503 F. Supp. 2d 1129, 1133 (D. Minn. 2007) ("Collateral estoppel bars relitigation of an issue *under Minnesota law* if four elements are established…") (footnote omitted) (emphasis added). Regardless, the state court could interpret those federal decisions. This factor supports abstention.

**3.    Nature Of Applicable Law**

The applicable state insurance law is not difficult or unsettled. This factor disfavors abstention.

**4.    Presence Of Related Proceeding**

This case was originally commenced in state court. The case can be reopened in state court upon remand. This factor is either neutral or supports abstention.

**5.    Jurisdictional Basis**

While this case is not currently before the Court based on diversity jurisdiction under 28 U.S.C. § 1332, diversity jurisdiction nonetheless appears to exist. However, the Diocese commenced this case in state court and U.S. Fire never sought to remove it to federal court under 28 U.S.C. § 1441.

**6.    Degree Of Relatedness Or Remoteness**

While this case is "related to" the main bankruptcy case, the Plan has been confirmed and mediation has reached an impasse. Thus, this case is remotely related to the main bankruptcy case. This factor supports abstention.

**7.    Substance vs. Form Of Asserted "Core" Proceeding**

If a case is a "non-core" proceeding, then abstention is favored. This case is a "non-core" proceeding and, therefore, abstention is favored.

**8.  Severance Of State Law Claims**

There are no "core" bankruptcy matters involved, so there is no need to sever the state law claims from "core" matters. This factor supports abstention.

**9.  Burden On Bankruptcy Court**

This case would not burden the Court's docket. This factor disfavors abstention.

**10. Forum Shopping**

The Diocese commenced this case in state court. It then removed the case to federal court under 28 U.S.C. §§ 1452 and 1334(b) assumedly to allow mediation and plan issues to be in one forum. But, the Plan has been confirmed and mediation has reached an impasse. The reasons for federal jurisdiction are gone and this factor supports abstention.

**11. Jury Trial Right**

The parties agree U.S. Fire has a jury trial right and U.S. Fire has not consented to the Court's jurisdiction. This factor supports abstention.

**12. Nondebtor Parties**

The Diocese is not a party to the case anymore. DW Harrow has been substituted in for the Diocese. This factor supports abstention.

For these reasons, the Court finds that permissive abstention is appropriate under 28 U.S.C. § 1334(c)(1).

**B.    Mandatory Abstention Under 28 U.S.C. § 1334(c)(2)**

In a footnote in its abstention brief, U.S. Fire argues mandatory abstention under 28 U.S.C. § 1334(c)(2) actually applies. More specifically, U.S. Fire argues:

> But for the possibility of diversity jurisdiction, mandatory abstention under subsection (c)(2) would have applied. Because the deadline for removal based on diversity has long since passed (and no Defendant sought diversity removal), the

only basis for federal jurisdiction was the bankruptcy removal statute (28 U.S.C. §
1452(a)). As such, mandatory abstention applies.

Dkt. No. 140, at 7 n.2. The Court agrees with U.S. Fire's first assertion that "[b]ut for the possibility

of diversity jurisdiction, mandatory abstention under subsection (c)(2) would have applied."

However, the Court disagrees with the remainder of U.S. Fire's argument. Section 1334(c)(2) reads

as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2). The statute says "an action *could not have been* commenced in a court of

the United States absent jurisdiction under this section…" Id. (emphasis added). The statute does

not say "was not commenced." Because this action *could have been* removed to the District Court

through diversity jurisdiction or *could have been* commenced there originally on the same grounds,

mandatory abstention does not apply. Frelin v. Oakwood Homes Corp., 292 B.R. 369, 382 (Bankr.

E.D. Ark. 2003) (using the face of the complaint to conclude diversity jurisdiction does not exist).

Even if mandatory abstention does apply, the statute requires a "timely motion of a party in a

proceeding." 28 U.S.C. § 1334(c)(2). That same requirement is not found in 28 U.S.C. §

1334(c)(1). The Court will now address remand under 28 U.S.C. § 1452(b).

## C.    Remand Under 28 U.S.C. § 1452(b)

While permissive abstention is appropriate under 28 U.S.C. § 1334(c)(1), it might

technically result in dismissal requiring the recommencement of the case. Thus, remand is more

appropriate. U.S. Fire agrees and asserts remand is appropriate because "if abstention is

appropriate, the bankruptcy court has authority to remand the case to state court pursuant to §

1452." Dkt. No. 140, at 16 (citing In re Mattson, 448 B.R. 540 (Bankr. D. Kan. 2011)); see also In re Hanson Indus., Inc., 83 B.R. 659, 666 n.10 (Bankr. D. Minn. 1988) ("Remanding a proceeding is just a form of abstention."). Remand, in combination with abstention, would allow the parties to proceed in state court without starting over. The court to which an action is removed under 28 U.S.C. § 1334(b) "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b); see also id. ("An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal[.]"). The statute does not define "any equitable ground." In addition to the twelve factors above, a court deciding whether to remand a case should also consider four other factors:

1) whether remand serves principles of judicial economy;
2) whether there is prejudice to unremoved parties;
3) whether the remand lessens the possibilities of inconsistent results; and
4) whether the court where the action originated has greater expertise.

In re Sears, 539 B.R. at 371–72 (internal citation omitted). U.S. Fire argues "[t]his action was filed in state court and despite the recent amendment it continues to involve only issues of state insurance coverage law." Dkt. No. 140, at 17. Moreover, "[t]he state courts are most expert in evaluating and applying state insurance law." Id. DW Harrow counters that efficiency favors keeping the case in federal court "because the sexual abuse survivors have been waiting years to receive compensation for their injuries" and if the case is remanded, "the current schedule will be lost." Dkt. No. 139, at 5. Again, the Court agrees with U.S. Fire.

First, this case was originally commenced in state court and there is no evidence that the state court is slower in moving matters along. In this way, principles of judicial economy support remand. Second, there is no prejudice to unremoved parties because there are no unremoved parties. Third, a search of Minnesota case law reveals several prior, state court lawsuits involving the Diocese. While a remand to the state court would not necessarily lessen the possibility of

inconsistent results, it would not increase that possibility. Finally, state courts regularly handle state law insurance issues. Taken together, these four factors (and the twelve abstention factors) support remand.

The Court is certainly sympathetic to the fact that the sexual abuse survivors have been waiting years to receive compensation for their injuries. However, a remand does not necessarily mean the current schedule will be lost. In the Court's second amended scheduling order, the Court included extensive background information on the history of this case and the prior extensions that have been granted. Dkt. No. 141. That history is expanded upon in this Report and Recommendation. A state court judge could and likely would take that history into account. Further, this schedule is the schedule proposed by U.S. Fire, a point the Trustee can bring to the attention of the state court judge if U.S. Fire seeks further extensions.

Simply put, there is no reason for this case to remain in federal court. Prior to bankruptcy, both sides had the chance to bring this case to federal court and declined to do so. Removal made sense as the case could be mediated and more easily coordinated with the main bankruptcy case. As mediation has reached an impasse and the Plan has been confirmed, the rationale for being in federal court is gone. For these reasons, and for the same reasons the Court finds permissive abstention appropriate, the Court finds remand under 28 U.S.C. § 1452(b) is also appropriate.

## CONCLUSIONS OF LAW

Based on the analysis above, the Court recommends the following conclusions of law:

1.   Federal subject matter jurisdiction exists under 28 U.S.C. § 1334(b).

2.   Permissive abstention is appropriate under 28 U.S.C. § 1334(c)(1).

3.   Remand is also appropriate under 28 U.S.C. § 1452(b).

## RECOMMENDATION

The Court recommends that the Defendant's Motion to Dismiss, Dkt. No. 112, be **DENIED**. The Court further recommends that the District Court **ABSTAIN** from hearing the case and **REMAND** the case to the state court. Accordingly,

**IT IS ORDERED:** The Clerk of the Bankruptcy Court shall promptly transmit this Report and Recommendation to counsel for both parties through CM/ECF.  Fed. R. Bankr. P. 9033(a). The parties may file objections consistent with the procedures set forth in Federal Rule of Bankruptcy Procedure 9033(b). Once all objections and responses have been filed, the Clerk of the Bankruptcy Court shall promptly transmit this Report and Recommendation and any objections or responses to the Clerk of the United States District Court for the District of Minnesota for review by the District Court. Fed. R. Bankr. P. 9033(b) & (d); Local Rule 9033-1.

**BY THE COURT:**

Dated:  April 22, 2022

*/e/William J. Fisher*
_____
William J. Fisher
United States Bankruptcy Judge